THOMAS A. SNOW AND OLIVER PALMER, MANAGERS OF THE OCEAN TOW-BOAT COMPANY, CLAIMANTS AND OWNERS OF THE STEAM TOW-BOAT "STAR," AND OLIVER PALMER, APPELLANTS, *v.* CHARLES HILL ET AL., OWNERS OF THE SHIP "OCEAN QUEEN," AND GEORGE LAW, MARSHALL O. ROBERTS, AND BOWES R. MCILVAINE, TRUSTEES OF THE UNITED STATES MAIL STEAMSHIP COMPANY, CLAIMANTS AND OWNERS OF THE STEAMSHIP "CRESCENT CITY."

Where a tow-boat was descending the Mississippi river with a vessel fastened to each side, and another at the stern, and a collision ensued between one of the vessels thus lashed and an ocean steamer ascending the river, the evidence shows that the latter was in fault, and must pay for all the damage.

THIS was an appeal from the Circuit Court of the United States for the eastern district of Louisiana, sitting in admiralty.

On the night of the 5th November, 1852, a collision occurred at about midnight, in the Mississippi river, at a point about twenty miles below the city of New Orleans, between the steamship Crescent City and the ship Ocean Queen, then in tow of the steam tow-boat Star. The Crescent City was at the time ascending the river, bound for New Orleans. The towboat Star was descending the river, having in tow, on her starboard side, the ship Charles and Jane, on her larboard side the ship Ocean Queen, and astern the brig Telegraph. The ships on either side of the tow-boat were firmly lashed to the latter, their bows projecting some distance beyond those of the tow-boat—the brig was about forty fathoms astern. The effect of the collision was to cause damage to both the colliding vessels—and to the ship Ocean Queen, to such an extent as to compel her to return to New Orleans, take out her cargo, and there undergo extensive repairs.

The owners of the Ocean Queen libelled both the tow-boat Star and the steamship Crescent City. The owners of the Crescent City libelled the Ocean Queen and the tow-boat Star, to recover the damages they had sustained. The owners of the tow-boat Star libelled the steamship Crescent City, for the damages she sustained in the collision.

The cases were by consent consolidated and tried together.

The cause having been brought to a hearing before the Hon. T. H. McCaleb, judge of the District Court, on the 4th March, 1854, he pronounced a decree declaring that the collision was attributable to the improper position in the river and the bad management of the tow-boat Star; and he ordered a reference to a commissioner, to ascertain and report the amount of damage sustained by the Ocean Queen.

On the 18th May, 1854, the report of the commissioner was confirmed, and a decree was made in favor of the owners of the Ocean Queen against the stipulators of the tow-boat Star for $19,465.79, with interest from the 10th January, 1853, and costs.

The libel against the Crescent City was dismissed, with costs.

On the 25th May, 1852, the Ocean Tow-boat Company appealed to the Circuit Court, from the decree in favor of the owners of the Ocean Queen.

On the 8th June, 1854, the owners of the Ocean Queen appealed to the Circuit Court, from that part of the decree of the 18th May which dismissed the libel against the Crescent City, with costs.

In November, 1854, these appeals were argued before the Circuit Court; and on the 18th June, 1855, a decree was made, affirming that of the court below, in favor of the owners of the Ocean Queen, against the tow-boat Star, for the aforesaid sum of $19,465.79, with interest from the 10th January, 1853, and costs.

It further ordered the United States Mail Steamship Company to pay the costs of the action of the owners of the Ocean Queen against the Crescent City.

It was referred to a commissioner to ascertain the entire damage arising from the collision, and to apportion it between the United States Mail Steamship Company, claimant of the Crescent City, and the Ocean Tow-boat Company, claimant of steamboat Star, according to the admiralty rule, where there has been mutual fault, each company to bear its own costs.

On the 29th of June, 1855, the Ocean Tow-boat Company appealed to this court from this decree.

The owners of the Ocean Queen appealed to this court from so much of the decree of the Circuit Court as discharged the owners of the Crescent City from liability to them.

In November, 1857, the commissioner made his report of the entire damages occasioned by the collision to the several vessels, and the parties to the several actions, by their respective proctors, having filed their written consent to the entry of a decree confirming the report, on the 21st November, 1857, a final decree was entered in the said actions in favor of Charles Hill and others, owners of the Ocean Queen, against Thomas A. Snow and Oliver Palmer, managers of the Ocean Tow-boat Company, and Oliver Palmer, their surety, the sum of $19,465.79, with interest at the rate of five per cent. per annum, and costs of suit.

It further decreed that the Ocean Tow-boat Company, upon the payment of the said last-mentioned sum, should recover

from the United States Mail Steamship Company, and Arnold Harris and Frederick Fisher, their sureties, the sum of $9,732.89, the one-half of the amount of the damages sustained by the Ocean Queen, with interest, at the rate of five per cent., and one-half of the costs of the suit.

There were other points in the decree, which need not be mentioned.

There were then three appeals pending before this court, viz:

CHARLES HILL ET AL., IMPLEADED WITH THE STEAMSHIP CRESCENT CITY,
*ads.*
OCEAN TOW-BOAT COMPANY.

CHARLES HILL ET AL.
*v.*
THE UNITED STATES MAIL STEAMSHIP COMPANY.

CHARLES HILL ET AL.
*ads.*
THE UNITED STATES STEAMSHIP COMPANY.

The cases were finally narrowed down to the one which is at the caption of this report, and which was argued by *Mr. Cushing* on behalf of the Ocean Queen, *Mr. Cutting* on behalf of the Crescent City, and *Mr. Benjamin* on behalf of the Ocean Tow-boat Company, owners of the Star.

The arguments upon both sides were chiefly drawn from the evidence in the case, which was somewhat contradictory. A summary of that portion of it upon which the judgment was based, will be found in the opinion of the court.

Mr. Justice McLEAN delivered the opinion of the court.

This is an appeal in admiralty from the Circuit Court for the eastern district of Louisiana.

Hill and others, as claimants, in their libel, state that the Ocean Queen, being duly enrolled, registered, and equipped, left the port of New Orleans on a voyage to Liverpool, England, having a cargo of about 2,780 bales of cotton; that on the 5th of November, 1852, about half past nine o'clock, P. M., under the tow of the tow-boat Star on the larboard side, the ship Charles and Jane on the starboard, and a brig in tow astern, were proceeding down the river Mississippi for the Balize; that at about midnight on the same evening, twenty miles below New Orleans, the steamship Crescent City, then ascending the river, came in collision with the Ocean Queen on her larboard bow, cutting her to the bends, breaking her planking, timbers, and knees, and so injured the ship as to

disable her from the prosecution of her voyage, and compelled her to return to New Orleans to refit; and that the costs of repairs and expenses amounted to the sum of twenty-five thousand dollars; and a lien on the Crescent City and the Star, for the above sum, is jointly and severally claimed.

The answer of the United States Mail Steamship Company, a body corporate, owner, says, the Crescent City was ascending the Mississippi river to the port of New Orleans, and was at a point in the river just below the English Turn, when, at about midnight, the pilot and crew discovered a tow-boat, which proved to be the Star, with the Ocean Queen and two other vessels, a short distance in front, and close to the eastern bank of the river; that there was not sufficient room to pass between the tow and the bank; that the tow-boat and her tow were out of the usual course of vessels descending the river, and that the Crescent City was in her proper position; that the Ocean Queen had not a light set in her rigging or elsewhere, visible to those on board the Crescent City; that the tow-boat failed to ring her bell or stop her engines and float, in the manner pointed out by law; that the Crescent City had slowed her engines on approaching the tow-boat, and receiving no signal that she was descending the river, put the helm of the Crescent City to the starboard, so as to pass outside of and clear of the Star and her tow; that she was heading to the western bank of the river, and as they approached her the Crescent City stopped her engines, and then backed, and was backing when the Ocean Queen and the tow-boat Star ran into the starboard bow of the Crescent City, striking her about twelve feet from her stern, and causing great damage.

That the pilot, officers, and crew, of the Crescent City, managed their boat with great care and skill; that the collision was caused by negligence and want of care of the tow-boat Star and the Ocean Queen, in not keeping their proper position on the river, in not ringing their bell, &c.

The answer of the Tow-boat Company to the libel was filed, denying the allegations it contained, and charging the fault on the Crescent City.

As the decision of the court must be governed by the evidence, it is not important to refer to the other pleadings in the case.

David Kelly, a witness, after describing the tow-boat and the other vessels fastened to her, as stated in the libel, said, when they started from New Orleans the Ocean Queen had one of her own men at the helm; afterwards the Star sent a man who took charge of it. They proceeded down the river, as near the middle as possible. In about an hour, one of the

men from the tow-boat Star came on board and set the wheel again. They continued about the middle of the river until twelve o'clock at night. At this time the witness was on the lookout, when he saw the Crescent City ascending the river at a great distance. The tow was about the middle of the river, a little nearer the western than the eastern shore.' The night was clear, so that one could see all over the river. Witness stood on the forecastle, forward, waiting for the Crescent City, supposing that she would keep clear of them, as there was plenty of room on the larboard side; but she approached so near that witness hailed her, and the tow-boat stopped her engines and rang her bell, but to no purpose; the Crescent City did not alter her course; she came so close that witness could see all over her forecastle forward, where her lookout should have been, but he saw no one on the lookout. He staid in his position until the Crescent City struck the ship Ocean Queen on her larboard bow. Witness then jumped off the forecastle and ran aft, but returned in a few minutes, and saw, for the first time, one or two men on the forecastle of the Crescent City. She struck the Ocean Queen on her larboard bow, and stove everything in forward; carried away the larboard cathead entirely, so that the anchor went down the full length of the chain, and parted all the fastenings of the Ocean Queen to the tow-boat, carried away the guards of the Star, and bent her smoke-pipe. The tow-boat brought the Ocean Queen back to the city. The witness was the only person on watch on the Ocean Queen. There were no lights hung out on the vessel, but he supposes her lights in the cabin must have been visible through the windows. Witness knew the river well; took particular notice, and is confident, when the Crescent City approached the tow, it was about the middle of the river. The Star did not alter her course. When he first saw the Crescent City, she was about half a mile distant; when he first hailed her, she was about four or five times her length from the tow. Witness thinks, when the Crescent City struck, she was going ahead fast. The tow-boat Star stopped her engine, and rang her bell; her light hung between the smoke-pipe and her forward fires.

John Marston was standing on the deck of the Ocean Queen when he first saw the Crescent City; she was about five times her length off. The night was clear, and he could distinctly see both shores. The tow-boat was heading down the river, as near the middle of it as possible. She was running about seven knots an hour; he thinks the Crescent City was running some eight or ten knots an hour when she struck the Ocean Queen. There were two signal-lights on the Star.

Henry Crowell, a witness, was on the deck of the Ocean Queen; saw the Crescent City half a mile off; as she approached, he hailed her. The tow was in the middle of the river, rather nearer to the western than the eastern shore; of this he is confident. Richard Matthews was master of the Ocean Queen. The night was clear and starlight; could see both shores. The Ocean Queen was nearer the western than the eastern shore. Soon after the collision, she drifted to the western shore.

Henry J. Whitney was master of the tow-boat; he has been engaged in that business eight or ten years; heard the bell ring; came immediately on deck; ran aft, and directed the hawser of the brig to be let go, in order that he might back. The tug was near the middle of the river, nearest to the western shore. He is positive as to this fact.

Witness has heard Captains Disney, Chapman, Brown, Laplace, Phillips, and others, say that Captain Foote, the pilot of the Crescent City, is not considered as a pilot, and especially among masters of tow-boats. Peter Curran was pilot of the Star, and on duty when the collision occurred. The Star had her full complement of men; was nearer to the western than the eastern shore. On seeing the Crescent City coming, he rang the bell to stop the engines; then rang the big bell hard, three or four times. The Crescent City seemed to come towards them, on the larboard side, till she got nearly abreast the ship's bow; then she hauled, as witness thought, nearly square across, until she hit the ship between the cathead and the stern, and hove her over on the guards of the tow-boat, which were broken. The bow of the Ocean Queen was a little ahead of the tow-boat. Witness watched the lights of the Crescent City when she turned her bow westward. At that time she was about a mile and a half from the tow. She appeared to be heading all the time westward, till she came abreast of the Ocean Queen, when she seemed to turn suddenly, as if she had her helm hard a-starboard to turn towards the western shore.

Asa Payson corroborates the above witnesses as to the tow being in the middle of the river, and the direction taken by the Crescent City across the river.

Foote, the pilot of the Crescent City, says he was ascending the river as near the eastern bank as it was prudent and usual to run. He descried the tow-boat, being on the lookout, from the top of the pilot-house; there was a man on the watch forward, Mr. Ranshaw, and also one on the deck. When he first saw the light, it was about a point on his port bow. He told the man at the helm there was a tow ahead, and to keep close

in to the eastern bank, for that was his position. As he approached the tow, an order to slow the engines was given, and at the same time witness said there was a tow ahead, either bound up or at anchor. The engines were slowed. The wheelsman said he could see no opening between the tow and the shore. Witness then directed him to put his helm to the starboard, and go outside of the tow. As soon as witness perceived the tow was descending the river, the engines were ordered to be stopped and backed. This order was obeyed, but it did not prevent the collision. The Crescent City was not going with force when the collision occurred. Captain Davenport appeared just after the collision, when the bows of the boats were still together. This was, he thinks, about twice the length of the boat from the eastern bank. He is confident, when he first saw the tow, it was not in the middle of the river. If he could have seen between the tow and the eastern shore, he should have kept near the shore; but not seeing an opening, he took a western direction, which was his proper course.

Several witnesses were examined who were on board the Crescent City, all of whom, more or less, corroborated the impression of the pilot, that they were very near the eastern shore, and that between the tow and that shore there was not room for the Crescent City to pass.

From what has been stated in the pleadings and testimony, it will be seen that in this, as in other cases of collision, the theories of the respective parties are in conflict. Both cannot be true; and if either be so to the extent claimed, the right and the wrong are established.

The claimants allege that the Ocean Queen in charge of the steam tow-boat Star, with two other vessels, was descending the river Mississippi, about twenty miles below New Orleans, being near the middle of the river, rather nearer to the western than the eastern bank, was run into by the Crescent City, and injured as described.

Some eight or ten witnesses called in behalf of the claimants—some of them experienced pilots, and well acquainted with the river—being on board the Star tow-boat, or one of the boats fastened to it, and several of them witnessed the collision, a part of whose testimony is above stated, and they all conduce to establish the allegations in the libel. They show that the tow-boat was in her proper course in the middle of the river, or rather nearer to the western than the eastern shore, and this all the witnesses admit was the usual and proper course. They also show that the Star had lights, and that there was no want of care in her management. Her course down the middle of the river was continued, and on the approach of the

Crescent City, so as to threaten a collision, the hawser which fastened the brig to the stern was thrown off, so that the tow-boat might back; the engines were stopped, and the approaching boat was hailed, the bells rang, and the Star was inclined still further to the western shore. More than this could not be done, nor required of the tow-boat with her towage. Being in her right position, the Star had no reason to apprehend a collision until the danger became imminent. And when this was apparent, nothing more could be done by the tow-boat than was done. It would be a strange rule of navigation to require a boat descending in the middle of a river, more than twenty-four hundred feet in width, to keep out of the way of a vessel ascending the river close to the shore, a thousand feet from the descending boat, which should change its course to a direction across the river, out of its proper course, and with the view of crossing the bow of the descending boat. No stronger case could be put or imagined, to show fault in the ascending boat.

The theory of the Crescent City is unreasonable, and is unsustained by the evidence. It was ascending, as alleged, the eastern shore of the river, as near to it as could safely be navigated, until the light of the tow-boat was discovered, which was directly ahead, and so close to the shore as not to give room for the ascending boat to pass between it and the shore. This is untrue, if the facts be true as to the position of the tow-boat.

The position of the tow-boat is proved by experienced pilots and river men, well acquainted with the river for many years, and whose character for truth has not been questioned. They say that they could see both shores, and that from their knowledge of the river they cannot be mistaken.

To counteract this proof, there is nothing but the statements of the pilot of the Crescent City, who is proved to be ignorant and incompetent, and two or three witnesses on board that vessel, who were not shown to have a knowledge of the river. The pilot directed the helm to the starboard, with the view of passing the tow on the western side. And this course was continued until the collision occurred, by striking the larboard bow of the Ocean Queen. This bow was a little in advance of the Star.

Whilst one or two of the witnesses speak favorably of Foote, the pilot, the greater number speak of him as ignorant of his duties, and not fit for a pilot. And in addition to this, it seems he was not acquainted with the river. This is shown to some extent, as he seems to have relied more on the opinion of the man at the helm, than on his own knowledge and judgment.

The place of collision, as appears from a survey of the river, is 2,420 feet wide; and if the tow was in the middle of the river, there were twelve hundred and ten feet between the tow and the eastern shore, which afforded room for three vessels to pass abreast, of the capacity of the Crescent City.

The statement of Foote is conclusive against his theory. He starboarded his helm, to pass the western side of the tow. His approach was seen by those on board the Star and the other vessels connected with her, some time, and preparations were made to avoid the collision. This shows that Foote was mistaken as to the position of the tow, and this mistake was fatal. Whether it resulted from his ignorance of the course of the river, or of his duties as a pilot, or from both, is immaterial. It shows that the Crescent City was in fault, as the colliding vessel.

It is alleged that the Ocean Queen had no lights, and that on the approach of the Crescent City the Star did not stop her engines and float, as the statute of Louisiana requires of the descending boat. The Ocean Queen was passive, following in the tow of the Star; her lights were not required to be hung out. The tow-boat Star was responsible for her safe navigation, so far as skill and knowledge of the river were concerned; but it was not responsible for the wrongs of other boats, which could not, reasonably, be avoided.

The statute of Louisiana referred to, we think, is not in the case; from the facts proved, its requirements could have had no application.

The Ocean Queen was bound to a foreign country; the Crescent City was carrying on an intercourse between New Orleans and the Atlantic States. The agency of the tow-boat did not change the character of the commerce in which the vessels were engaged. The Ocean Queen was propelled by steam, and whether the power be located in the tug or in the ship, can be of little or no importance. It was subject to the admiralty jurisdiction, and to the rules applied to vessels having the same motive power.

The Circuit Court decreed against the Tow-boat Company in *solido*, the sum of $19,465.79 damages, with interest thereon at the rate of five per cent. per annum from the 10th of January, 1853, till paid, and costs of suit; and that the Tow-boat Company, upon the payment of the above sum, shall have and recover from the Mail Steamship Company, &c., $9,732.89, the one-half of the sum decreed as above.

In this decree we think there is error. The tow-boat was not in fault. Her equipments and crew were such as the law required, and the usage of the service. In nothing did the

tow-boat fail, which in the least conduced to the disaster. The Crescent City was wholly in fault, and the decree for the damages suffered by the Ocean Queen should have been against the colliding boat. The decree of the Circuit Court is therefore reversed, and the cause is remanded to that court, with directions to enter a decree for the above damage against the Mail Steamship Company, their sureties, &c., and also the sum of two hundred and eight dollars and ninety-seven cents for the damage done to the tow-boat, and also for costs.