THE MONROE C. SMITH.

THE WILLIAM E. REIS.

(District Court, N. D. Ohio, E. D. October 3, 1912.)

No. 2,455.

COLLISION (§ 91*)—STEAM VESSELS MEETING—FAULT.

    A collision on the St. Clair river at night between two large lake steamers, both loaded, the Reis coming down and the Smith passing up, after the vessels had exchanged passing signals of one blast, *held*, on the evidence, due solely to the improper navigation of the Smith in keeping too close to the Canadian channel bank, which caused her to take a broad sheer to port and strike the Reis on the port side, although such course was not required by the position or course of the Reis, which were such that the vessels would have passed in safety, but for such sheer.

    [Ed. Note.—For other cases, see Collision, Cent. Dig. §§ 187–192; Dec. Dig. § 91.*]

In Admiralty. Suit for collision by the Cleveland Steamship Company, owner of the steamer William E. Reis, against the steamer Monroe C. Smith; the United States Transportation Company, claimant. Cross-libel by the owner of the Smith against the Reis. Decree against the Smith.

Goulder, Day, White, Garry & Duncan and Holding, Masten, Duncan & Leckie, all of Cleveland, Ohio (Harvey D. Goulder, and Frank S. Masten, both of Cleveland, Ohio, of counsel), for libelant and cross-respondent.

Hoyt, Dustin, Kelley, McKeehan & Andrews, of Cleveland, Ohio (Hermon A. Kelley and George W. Cottrell, both of Cleveland, Ohio, of counsel), for respondent and cross-libelant.

DAY, District Judge. This case grows out of the collision which occurred in the waters of the St. Clair river on the evening of November 1, 1907, between the steamer William E. Reis, belonging to the Cleveland Steamship Company, and the steamer Monroe C. Smith, belonging to the United States Transportation Company. The boats were modern steel steamers—the Reis being 416 feet long, with a 50-foot beam; the Smith, 380 feet long, with a 50-foot beam. The Reis was down-bound laden with iron ore; the Smith was up-bound laden with coal. The collision occurred after nightfall. The weather was dark and rainy, but lights could be seen for a considerable distance, and the banks of the river were visible. Both of the vessels seem to have been properly equipped, and the officers and crew properly stationed on each. There is no doubt but that the lights were proper, and that single blast passing signals were exchanged timely. The scene of the collision was that part of the south channel of the St. Clair river which lies between Walpole Island, on the Canadian side, and Russell Island, on the American side. On the easterly shore of Russell Island the government maintains three lights, marked on the chart and referred to in the testimony as "Russell Island Upper

Light," "Russell Island Middle Light," and "Russell Island Lower Light," respectively. The width of the navigable channel abreast of Russell Island is in the neighborhood of 1,000 feet; but the width of the river from bank to bank is from 1,500 to 1,700 feet between shore lines.

There is no dispute as to the number, character, or order of the signals; it being conceded that the Smith first blew a passing signal of one blast, indicating her intention to pass the Reis in the usual manner provided by the rules, namely, port to port, and that the Reis replied with one blast. Later the Smith repeated her signal of one blast, to which the Reis again replied with one. Shortly thereafter the Smith blew an alarm of several short, sharp blasts, and the Reis answered with an alarm. Inasmuch as there is no controversy concerning the sufficiency of the crews or lights, or the order of signals, it is important to inquire as to the courses and positions of the vessels at the time of this collision.

It is the claim of the Reis: That, being bound down at slow speed, owing to the darkness and rain, on picking up the buoy at the head of Russell Island, and knowing definitely her position, she increased to half speed. That she met and passed the Sill up-bound in the vicinity of Indian Dock, and as she was clearing the Sill ported slowly in the usual and proper course. That having so ported she received one blast from the up-bound Smith, then three-quarters of a mile below, which she answered. At this time the Reis was under slow port wheel, and so continued until near about a half mile away from the Smith. The Smith, then well clear to port and showing her red light, again blew one blast. That the Reis answered one, and having swung under her slow port helm until she would be well clear of the Smith, she steadied. The Smith immediately blew an alarm, opening her green light and still showing red, about four points to port. The Reis answered the alarm signal and hard-ported. At this time the Smith hit her amidships, between the first and second hatches. The Reis claims that the collision was about one-third out from the island side or American side; the contention being on the record that the Reis was proceeding in an ordinary course, attentive and careful, that the passage of the Reis and Sill was usual and orderly, and that in passing the Sill the Reis must have been in the middle of the river.

It is the contention on behalf of the Smith: That after coming up on the Russell Island lower ranges she ported and directed her course toward Walpole Island on the starboard side of the river. That at a short distance below Russell Island Lower Light, the first set of one blast passing signals was exchanged with the Reis, which then appeared to the Smith to be at the upper end of Russell Island. That the Reis continued down the river without apparently shifting her course, which course was on the Canadian shore. The result was that the Smith was obliged to hold her course, or was crowded over toward Walpole Island bank. Observing this, the Smith blew another one-blast signal, which was answered with one by the Reis. Notwithstanding this, the Reis still failed to give way and continued to head down on the Smith. As it was seen by those in charge of the Smith that

the Reis was forcing the Smith over onto the starboard channel bank, a danger signal was blown by the Smith and her helm was hard-ported in order to hold her bow onto the bank, and her engines were reversed. Notwithstanding these efforts to avoid the Reis, the starboard bilge of the Smith struck the Walpole channel bank, causing her bow to work out to port against her helm and against the natural tendency of her reversed engines, while her stern remained or stuck close to the bank, and she struck the Reis; the Reis being at that time over into the Smith's water.

Following the rule laid down in Goslee v. Shute, 18 How. 463, 15 L. Ed. 462, this being a collision at night, I will endeavor to ascertain the leading facts by the weight of the testimony, and so, if possible, arrive at the correct cause of this collision. There is a great conflict between the testimony of the officers and crew of the Reis and Smith. It is apparent that the Reis met the steamer Sill up-bound, and it appears from the testimony of the witnesses on the Sill that the Reis passed the Sill below the Indian Dock. This is disputed by the Reis' crew, which put the place of passing above the Indian Dock. I am inclined to think that the place of passing was a short distance below the Indian Dock. A consideration of the testimony of the Sill's crew does not develop that there was anything unusual in the manner of the passing of the Sill and the Reis.

William Hinnegan, collector of customs for the Canadian government at Walpole village for 12 years, testified to seeing the collision from his house on Walpole Island, which is on the river bank some 1,000 to 1,500 feet from the point of the collision, according to his testimony, and he placed the boats to be about between the Lower Range Light and the Middle Range Light on Russell Island, but on the Canadian shore, some 200 feet or 300 feet out from the Canadian channel bank. He describes the Smith as sheering about half the length of herself out of the river, from the Canadian channel bank.

Another disinterested witness was Captain Hagen, of the tug Hardin, who had had some 40 years' experience on the St. Clair river. According to his testimony, he was in the center of the navigable channel on his tug; that he saw the Reis straighten out and open her range lights, so that she was heading to port of the tug; that the Smith was on his starboard bow, apparently crowding the bank; that if the boats had continued the Hardin would have cleared the Reis without changing her course; and that the Smith shot right out in the river into the course of the Reis.

Much mathematical calculation and mapping of courses has been resorted to in the course of the arguments in this controversy. One thing is apparent to me, that the course adopted by the Smith was voluntary, and it was not changed by reason of the Reis. It is apparent that this course was a steady course up to the time of the sheering. The location of the point of collision is not positive. The Smith was proceeding near to the Canadian channel bank. This is shown by the fact, as testified to by the crew of the Smith, that shortly before the collision a rush of water was noticed, followed by the sheering of the Smith. It is apparent from the testimony of the wit-

nesses that the sheer of the Smith was a broad one. It is testified to by the captain of the Sill. There is nothing in the record to show that this collision would have occurred, had the Smith not sheered. The Smith's engines were running at full speed, and the water rushing against the channel bank would undoubtedly have had considerable effect upon the navigation of the Smith. It is important to recollect that this was not a head to head collision, but that the Reis was struck on the port side while proceeding down the river.

I attach great importance to the testimony of Captain Clark, who says that the sheer taken by the Smith was a broad sheer. This testimony of his, taken in connection with the testimony of all the witnesses, would account for this collision. Had the Smith not sheered, the Reis, in the usual course of navigation, would have passed down the river without collision. The sheering of the Smith was obviously caused by reason of the manner in which she was navigated, and not owing to the course taken by the Reis. The probabilities of the situation indicate such a state of facts.

I have not commented on the testimony at length, nor gone into it in detail. I have endeavored to arrive at the probabilities of the situation only. Two facts stand out prominently in the record: Firstly, that there was no change in the course of the Smith by reason of the course pursued by the Reis; and, secondly, that the collision would not have occurred, had it not been for the sheer of the Smith.

Taking this view, the fault of this collision must rest on the Smith.