Hunt, J.,
delivered the opinion of the court:
Samuel M. Reynolds was appointed and commissioned in March, 1863, an additional paymaster of volunteers in the Army of the United States, and was honorably mustered out of serv *318 ice in March, 1866. He gave bond with, surety for the faithful discharge of his duties. Ou the 22d of December, 1865, in his official capacity, he received from Colonel Paulding, paymaster in charge of the District of Columbia, two checks for money to pay the troops; one for the sum of $25,000, drawn on the Treasurer of the United States, and the other for a like sum, drawn on the First National Bank at Washington. He at once proceeded, together with his clerk, one Charles H. Clark, to the Treasury, and there presenting the check on the Treasurer was paid $25,000 in Treasury notes. He received the funds in two packages; one package contained $15,000 in ten-dollar notes; the other package contained $10,000 in five-dollar notes.
On leaving the Treasury Colonel Reynolds took charge of the package containing the 10,000, while his clerk had the other containing the $15,000. They then proceeded in company to the First National Bank, in order to draw the money for the second check of $25,000, and entered the bank together. Colonel Reynolds on entering went up to a desk opposite the counter' of the paying-teller of the bank, and about thirteen feet distant from the counter, for the purpose of indorsing the check, and laid down his package before him on the desk, that he might do so. His clerk placed the package of $15,000, which he had in charge, on top of the. other, and stepped over to the paying-teller’s window to inquire for a money-bag, which he had ordered sent to the bank, to carry away the money in. After indorsing the check, Colonel Reynolds moved over to the paying-teller’s counter and stood for two or three minutes half-facing the packages on the opposite desk. When the paying-teller came to wait on him, he turned his attention to the teller, and commenced explaining what sort of funds he desired to have paid him. Before finishing this explanation he discovered the top package was missing. His clerk was alongside of him. He gave immediate alarm, and intrusting the remaining package to his clerk they both started in pursuit of the thief. Failing to apprehend or discover him, they secured the assistance of the Metropolitan police and other detectives.
The loss was at once communicated by Colonel Reynolds to the Paymaster-General’s Department. No clue has ever been found to the thief or the lost package.
Application was made by Colonel Reynolds to General Alvord, *319 Paymaster-General, for relief from responsibility for this loss, under tlie provisions of the act of June 23, 1870. By these provisions, which were extended by the act of 1872, the accounting officers of the Treasury were authorized, when there occurs a deficiency in the account of an Army paymaster, and no apparent fraud exists on his part, to allow him a credit to the extent of $5,000, upon the recommendation of the Secretary of War.
On the 2d of February, 1801, General Alvord reported that he had carefully examined the affidavits setting forth the circumstances of this case, which he succinctly narrated. He arrived at the conclusion that “ the misfortune which befell Colonel Eeynolds on the occasion was one which the act of 23d June, 1870, was intended to provide for; ” and he recommended that a credit to the extent of $5,000 be allowed him by the accounting officers of the Treasury, under that act, extended by the act of June 7,1872. Accompanying his report, and expressly brought to the notice of the Secretary of War, were testimonials to the honorable character, truthfulness, and integrity of Colonel Eeynolds from his superior officers and from other citizens of eminence in the public service.
The recommendation of General Alvord was approved by the Secretary, and a credit of $5,000 was allowed Colonel Eeynolds upon his account. This was deemed the maximum of relief permitted under the acts of Congress referred to.
In September, 1873, suit was instituted in the district court of the United States for the eastern district of Pennsylvania, in behalf of the United States, against Samuel L. Eeynolds and. his sureties on his official bond; and on the 1st June, 1876, judgment was rendered against them for the sum of $11,585.62. In the mean time a petition had been presented to Congress by Colonel Eeynolds, praying that relief might be granted him to the full amount of his loss of $15,000. The Secretary of War recommended to the Committee on Claims in the Senate that the relief prayed for be granted. And again, in 1877, the succeeding Secretary of War, J. D. Cameron, made a like recommendation to a committee of the House of Bepresentatives of a second Congress, to whom another application for relief had been referred.
These measures, although favorably reported upon, do not seem to have reached final action.
*320 The sureties of Colonel Reynolds baying satisfied tbe judgment rendered against them, Congress finally passed, on. the 3d March, 1879, the act under which this suit was instituted. (20 Stat. L., p. 617.) The sureties being both dead, the suit is now prosecuted in the names and behalf of their representatives, who have been regularly made parties to the record.
The title to the act is “ An act for the relief of the sureties, &c., of Samuel M. Reynolds, late additional paymaster of United States volunteers.” It provides that the claims of the sureties upon the official bond of Samuel L. Reynolds for the refunding by the government of the amount of the judgment rendered against them, and of Colonel Reynolds for release from liability on his bond to the extent of the judgment, on account of the loss by an alleged larceny from him of government funds,be referred to this court. The act proceeds to declare that they—
“ Shall be adjudged upon their merits; and said claimants- and the United States shall have the right tó use, as competent evidence before the said court, any records and official reports on file in the War or Treasury Departments in relation to said -loss and claims for allowance arising therefrom, and any additional testimony relevant to the same; and if said court shall be satisfied from the .evidence that it is just and equitable, it shall render judgment in favor of said claimants upon the said respective, claims: Provided, That no such judgment in favor of said sureties and their representative shall include costs or exceed the amount of the money lost by said Samuel M. Reynolds, with the interest paid thereon by said sureties.” (20 Stat. L., p., 617.)
The grant of authority in the statute is of an unusual character. The court is required to decide upon the claims before it “upon their merits.” “.Any records and official reports on file in the War or Treasury Departments in relation to said loss and claims for allowance arising therefrom” are made evidence; and if the court “ shall be satisfied from the evidence that it is just and equitable,” it shall give judgment in favor of the claimants.
Thus, the established rules which govern this court and other judicial tribunals in the admission and effect of evidence are at once relaxed and enlarged. The door is thrown wide open for the admission of the opinions of officers of the Army and of the executive departments upon questions of law and of fact. Their reports and letters, certificates and testimonials of character, become, in the words of the statute, “competent evidence *321 before tbe court” upon the issues submitted for our determination.
But this relaxation of the rules of evidence is not the only change effected by this statute. The principles of law which regulate the jurisdiction and define the duties of this court in deciding upon the responsibility of a paymaster in cases like this are also altered. Under sections 1059 and 1062 of the Revised Statutes the court is authorized to enter a decree for the relief of any such officer upon ascertaining that the loss has been “incurred without fault or negligence on his part.” In the present instance, we are authorized to render judgment in favor of the claimants if we are satisfied, from the evidence laid before us, that it is just and equitable to do so. Instead of being-called upon to determine whether, from the circumstances of the case, there has been, in contemplation of the law, fault or negligence on the part of Colonel Reynolds, we are now to render judgment in favor of the claimants if, in our opinion, it be “just and equitable ” to do so. Thus, a far ampler discretion is confided to us than we would be justified in exercising under the recognized principles of law. According to those principles the claimants were held by the United States district court of Pennsylvania to be entitled to no relief. From the effects of the judgment of that court, Congress has seen fit to interfere for the claimants’ relief. The title to the act, in this instance, furnishes a key to unlock its object. It is correctly designated “ An act for the relief of the sureties, &c., of Samuel J. Reynolds.” The relief contemplated is relief from the stern and inflexible judgment of the law. It is to be awarded by us if we deem it just and equitable to grant it, by the lights held up to guide our judgment.
Nor are we to measure the claimants’ rights by the complex system of artificial rules and precedents known and practiced in courts of chancery, but according to what in the conscience of this tribunal may seem to be right — secundum wquum et bonum; we are to decide what to ns may appear to be proper and in consonance with natural justice.
This special statute- lifts the case out of the operation of the act of May, 1866, and subjects the claimants’ rights to a more comprehensive and far less stringent rule.
“ After a misfortune has happened, it is easy to see how it might have been avoided. * * But this is not a fair mode of *322 trying tbe case,” said tlie Supreme Court in Goslee v. Shute (18 How., 466).
■Accordingly, we find numerous suggestions by tlie learned counsel for the defendants, as to the means by which Colonel Reynolds might have avoided this loss. Rut the employment of such means presupposes a knowledge of the necessity for them. Colonel Reynolds had no reason to anticipate the emergency. The betrayal of anxiety by actions of preventive and unusual caution might attract attention, arouse curiosity, and awaken the cupidity of dishonesty. Apparent indifference may, under circumstances, disarm suspicion and become a measure of efficient and prudent strategy. There was nothing in the external appearance of the packages which might indicate that their contents were of unusual value. There was nothing to excite suspicion as to the presence of sharpers and rogues, either at the Treasury or at the bank. There was no cause for Colonel Reynolds to apprehend that any interruption of his own vigilance would not be supplied by that of his clerk, who was by his side. The very fact that he had just openly finished indorsing a check and was "arranging for its payment would induce strangers to infer that he was about to receive money, rather than that he had already received a sum. The suddenness, the boldness, the adroitness, and the success of the theft indicate the employment, by a practiced hand, of some artifice by which his vigilance was entrapped into a brief inattention, against which reasonable prudence could not guard, and which human sagacity could not foresee.
In our opinion, it is just and equitable, under the circumstances, that the claimants should obtain the relief they ask; and it is therefore ordered, adjudged, and decreed that they have judgment as prayed for, as follows:
A. Wilhelm, surviving administrator de bonis non of Robert W. Coleman, deceased, for the sum of $5,587.18, and Amos Slay-maker, executor of the last will and testament of James L. Reynolds, deceased, for the like sum of $5,587.18.