Nott, J.,
delivered the opinion of the court:
This case in its principal cause of action bears a striking resemblance to the recent case of Hatohins (12 O. Cls. R., 181; ■96 U. S. R., 689). In both cases the contracts in suit were building contracts; in both the claimants agreed to build walls *403 of rubble-stone; in both, the superintendent of the work, without authority to order an alteration, compelled them to build the walls of ranged rubble or broken ashlar; in both they complied, but maintained that they were building a better wall than their contracts required; in both they neglected to notify the responsible agent of the government at Washington, who, in . the former case, was the Secretary of the Treasury, and in this the Quartermaster-General.
Here the similarity of the cases ends and their diversity begins. In the former, the claimant brought his action in this court to recover for the extra value of the better walls. The court found the facts and fixed the amount of the damages, but held that the action of the local superintendent did not bind the defendants, and that the claimant having proceeded without due authority could not recover.
Hawkins appealed, and the Supreme Court affirmed the judgment. He then went to Congress for relief, and Congress perceiving that the government had acquired from him through the action of its own agent a better building than he was bound to furnish for the price paid him, a benefit which in equity and good conscience should be paid for, acted upon the facts judicially ascertained by this court, and gave him the precise amount which he would have recovered in his action if the work had been duly authorized. (Act 2d March, 1881, 21 Stat. L., p. —, chap. —. See also report 886, Com. Claims, H. B.., second session Forty-sixth Congress.)
In this case the claimarits went in the first instance to Congress, and the same Congress which passed the act for the ■relief of Hawkins passed the following act for their relief:
“AN ACT for tlie relief of Edward Braden and J. W. Angus.
“Be it enacted, by the Senate and House of Representatives of the United States of America in Congress assembled, That the •claim of Edward Braden and J. W. Angus for extra compensation for the construction of supply depot building and shops at San Antonio, Texas, be referred to the Court of Claims,- to be heard and determined according to law and justice.
“Approved June 1, 1880,” (21 Stat. L., p. —, chap. —.)
If the two last words of this statute had been omitted — if it had stopped with the words “to be heard and determined according to law”— it might be well asked whether any benefit *404 whatever would have been conferred upon the claimants; whether their case would not have come into this court in precisely the same plight in which that of Hawkins was, notwithstanding that at the time when this act for their relief was passed, the decision of the Supreme Court in Hawkins’ case had been rendered, and the case reported; and notwithstanding that, Congress must be supposed to have had a knowledge of the law of the land as declared and expounded by the highest judicial authority. The question, therefore, is, whether Congress intended to waive the technical defense which prevailed in the other suit (inequitably, as Congress subsequently thought) and whether that intent is sufficiently expressed by this statute ? For if the statute does not authorize this court to find for the claimants in quantum meruit, at least so far as the defendants were benefited by the interference of their own agent, the action must be adjudged against the claimants, and the act passed for their relief must be deemed entirely inoperative and meaningless.
These special or private acts referring individual cases in this court have always occasioned an embarrassment of interpretation. They generally refer the “ claim ” of theparty, which, being an undefined thing, leaves it uncertain whether the cause of action presented by the pleadings here is precisely tlxe same thing which Congress intended to refer. There being no legislative record of a claim in Congress analogous to the judicial record of a suit in a court of justice, whereby the precise thing sought to be recovered can be ascertained, it is almost always a matter of uncertainty as to what relief Congress intended to grant. Ordinarily courts look to the terms of a statute to ascertain the legislative intent, but when the terms of a statute refer to something which is not set forth, a court must necessarily look behind the statute to ascertain what that something is.
In the legislative practice of Parliament all private bills are-prefaced by a preamble in which the petitioner is required to set forth the nature of his claim, and the preamble restrains the construction of the act and aids in the interpretation of its terms. In this country no such legislative practice exists.
Statutes referring controversies between the government and its citizens to judicial tribunals for judicial redress, are exceedingly modern, being no older than this court, and thus far have received no comprehensive examination. From time to time,. *405 however, they have come before the courts, and it will be well Before going farther to ascertain what has already been determined.
In Meade’s Case (2 C. Cls. R., 224; 9 Wall. R., 691), the statute referred back the claim to this court; it recited that doubts were entertained as to whether the court had jurisdiction, and •declared that it was passed to remove such doubts. Both this and the Supreme Court held that it did not operate to authorize a decision upon the merits irrespective of a bar arising from a former adverse decision of a special tribunal having jurisdiction of the claim.
In Nock’s Case (2 C. Cls. R., 451), judgment had gone against the claimant, yhen Congress passed an act re-referring the claim to this court “for its decision in accordance with the principles of equity and justice,” but limiting the amount for which judgment might be rendered. The counsel for the government thereupon set up the former judgment in bar, and argued that Congress had no judicial power to award a new trial, nor legislative power to circumscribe or limit the judgment of a court. But it was held by this court that Congress were, to all intents and purposes, the defendants in the suit, and as such might come into court through a statute and say that “ they will not plead the former trial in bar, nor interpose ■a legal objection which defeated a recovery before, but that they thus consent upon the condition that the recovery, if any shall be had, shall not exceed a certain amount.” Other cases might be cited, and notably that of Cross (post), where the statute, though in form a legislative act, is in substance a consent or stipulation by a party litigant, and where the real intent of Congress must be ascertained by supposing them to be the ■defendants in the suit.
In Cross’s Case (5 C. Cls. R., 80; 14 Wall. R., 479), Congress, with reference to a certain case then pending, waived a defect in the claimant’s title to a lease on which he was seeking to recover. He subsequently brought a second action for rents subsequently due, and the question was whether the act referring the claim and waiving the defect extended to rents not then due and could be used to sustain the second action. This •court held that there was not one provision in the enactment that could, “ by any acknowledged and known rule of interpretation and construction, be made to apply to any other case *406 than the one then remanded.” But the Supreme Court reversed the decision, and said:
“We cannot suppose, without an express declaration to that effect, that Congress intended to legislate in a manner that would enable a creditor of the government to obtain only a part of his claim, when the whole of it was deemed by the court that tried the case to be meritorious.”
In Roberts’s Case (6 C. Cls. R.; 92 U. S. R., 41), the claimants perfprmed a mail service additional to that required by their-contract, it being expressly agreed between them and the Postmaster-General that the additional service was subject to the ratification of Congress and imposed no obligation upon the department. The claimants brought their action, and while it was pending Congress enacted that “the claim” “for compensation for services in addition to the regular service required under the contract” be refereed to the Court of Claims “to determine and adjudge whether any, and, if any, what, amount is dire said trustees for said extra service.” This court held that “private acts” “are always to be strictly construed;” that “most especially are they to be so construed as to prevent the entrapping of the government by fixing upon it a liability where the intention of the legislature was only to authorize an investigation and determination of the question of liability;” that when Congress refer a case to this court “ to decide whether any amount is due we must decide that precise point at the threshold of the case, and no latitude of construction of particular words or phrases in the act to dispense with our performance of that plain duty is allowable in favor of the party for whose benefit and through whose efforts the act was passed and, finally, that “ against him the rule of strict construction is always to be enforced.” But the Supreme Court reversed the judgment, and, on the contrary, held that “.under the peculiar circumstances of the case, its well-known history and its frequent consideration by Congress,” the act was intended to validate the suit, which had been pending for five years in this court, and that “ where a necessary public service has been performed at the request of the proper government agents and under the expectation of compensation, and with reliance upon Congress to fix the amount, and where Congress upon application made to it has referred the matter to the Court of Claims, that court is authorized to make and adjudge such an allowance as is required ex cequo et bono.”
*407 In Haskell's Case (9 C. Cls. R., 410) the suit was barred by the statute of limitations when the act of reference passed. The claim had been before the Davis-Holt-Campbell Commission, and an award upon it had been made which the claimant had accepted and the defendants had paid. Congress referred, the claim with directions that the court “ adjudicate it on terms of equity and justice,” but there was nothing to imply that Congress were informed when they passed the act that the claim had been compromised and was in law satisfied. Accordingly it was held that the act did not reopen a controversy which had been compromised and settled, nor authorize the court to disregard a legal defense which precluded a consideration of the case upon its merits.
In Harvey & Livesey’s Case (12 C. Cls. R., 141) the claimants had sought to recover in an action at law, but j udgment had gone against them. Congress then came to their relief and passed an act conferring equity jurisdiction upon this court, and authorizing it to reform the contract in suit according to the principles of equity jurisprudence. The claimants filed their petition and sought, among other things, to reopen demands at law which had been decided against them in the former suit. But this court held .that the purpose of the statute was merely to supply a defect of jurisdiction, and that the court must proceed simply as a court of equity to give the relief which it could not give before as a court of law.
In Erwin’s Case (13 C. Cls. R., 49; 97 U. S. R., 392), the statute recited the fact that a suit under the Abandoned or Captured Property Act, by accident or mistake, had not been brought within the jurisdictional period for bringing such actions and authorized this court to take jurisdiction of the case under the provisions of that act. Both this and the Supreme Court held that it did not enlarge the claimant’s rights in the proceeds of the captured property and that its purpose was strictly jurisdictional.
In Reynolds’s Case (15 C. Cls. R., 314), the statute was the converse of that in Erwin’s case. That is to say, a paymaster had lost a package of public money in 1865, for which suit had been brought against his sureties and judgment had been recovered. They maintained that the loss was without fault or negligence on his part, and went to Congress for relief. The paymaster had neglected to bring a suit for relief in. this court *408 under the Disbursing officers’ Act (Rev. Stat., 1059, 1062), and thedecision of this court in Hall’s Case (9 id., 270) was anauthority for supposing that the officer and his sureties were too late to bring’ such, a suit after judgment and satisfaction against them. Congress therefore passed an act for their relief. But this act did not, as in Erwin’s case, refer the jurisdiction, to the general statute, but, on the contrary, prescribed conditions of its own resembling yet not identical with those of the Disbursing officers’ Act. This court held that it conferred ampler discretion than the general statute, and by its terms enlarged the ordinary rules of evidence.
In the Caldera Cases (15 C. Cls. R., 546) the claimants’ demands had been adjudged by a special tribunal and the relief awarded them had been accepted. The statute conferring jurisdiction upon this court did not designate the claimants by name nor profess to reopen the awards. It, however, provided that “ any person” “making any claim upon the balance of the fund usually designated as the Chinese Indemnity fund” “for loss sustained by the plunder and destruction in the year 1854 of the bark Caldera may commence proceedings,” &c., and that the court “shall have full jurisdiction to hear and determine such claim or demand according to the principles of justice and international law.” Of this statute the court said:
“ These comprehensive terms, taken in connection with the fact that it was well known to Congress when they passed the act that all claims now sued on had been before the board, and that 40 per cent, of them had been allowed and paid, and 60 per cent, disallowed, lead us to the conclusion that it was the intention of Congress to grant these claimants a rehearing before this court as to the disallowed 60 per cent.; for otherwise the act refers nothing whatever to us.”
The difference between these cases and that of Haskell {supra) did not lie in the form of the two statutes (for, so far as form went, the Haskell case was the stronger of the two), but in the extrinsic circumstance that Congress when enacting the Caldera statute must have known that a former award had been made by a board having jurisdiction, and that the claimants who accepted it were substantially the only parties who held claims upon the fund.
While the purpose of some of these acts of reference may be merely to confer jurisdiction, as in Meade’s Case (2 C. Cls. R., 225), or to ratify a previous transaction and validate an exist- *409 lug cause of action, as in Roberts's Case (92 U. S. R.), or to waive a technical defect, as in Cross's Case (14 Wall. R., 479), or to take a case out of a statutory limitation of time, as in Erwin’s Case (13 C. Cls. R., 49; 97 U. S. R., 392), and while a purpose is to be ascribed to a statute if possible, as was held in the Caldera Cases (15 C. Cls. B., 546), nevertheless these special acts are not to be construed to repeal by implication a general and public act, nor to take the case referred by the one out of the restrictions imposed by the other. Thus, in TiUson's Case (100 U. S. B., 43), the claimants had been financially ruined by the delay of the accounting officers in passing and paying their accounts. Congress passed an act for their relief, referring to this court the claim “ growing out of the failure of the government to keep and perform the contract or contracts as to time and manner of payment,” and directing this court to “adjudge the amount equitably due said firm, if any, for such loss and damage.” The only damage which could be awarded for this delay, upon legal principles, was interest, and the Supreme Court intimated that as between ordinary litigants interest would have been recoverable, but that the special act did not by implication take the case out of the operation of the general statute which provides “that no interest shall be allowed on any claim,” “unless upon a contract expressly stipulating for interest.” (Bev. Stat., § 1091.)
Finally, it is to be observed that the words “ to adjudge the claim according to the principles of equity and justice,” or some such equivalent words, are to be found in almost all acts of reference, whether to this court, or, in times past, to special tribunals or boards of arbitration, yet they have never been held to invest the judges of a court with an unlimited personal discretion, nor even to confer upon the tribunal an equity jurisdiction. So long as a tribunal remains a court it must proceed, if a court of law, according to the rules of law; and if a court of equity, according to the principles of equity j nrisdiction. As was said by the Supreme Court in Tillson’s case (supra):
“ The reference is made to the court as a court, and not to the judges as arbitrators. The determination is to be made according to the fixed rules which govern that court in the adjudication of causes, and not at the discretion of the judges. The same principles of jurisprudence, and the same statutory regulations as to practice are to be applied here that would be if *410 the case had come into the court under its general jurisdiction. * * * To our minds the word ‘equitably’as here used [in the statute] means no more than that the rules of law applicable to the case shall be construed liberally in favor of the claimants.”
Speaking for myself and not for the court, I deduce from the foregoing cases for my own guidance the following rules of construction :
1. Where Congress refer a claim, or class of claims, with instructions to the court to render judgment for whatever may be found to be justly and equitably due to the claimant (or some such equivalent expression), full effect should be given to the remedial purpose of the statute, but at the same time the court should be vigilant to see that it is not applied to matters whereof Congress might have been ignorant when it was passed, or made to work results which probably were beyond the legislative purpose of its framers.
2. Where a claimant could not have maintained an action in this court, either for want of jurisdiction or because his demand was barred by lapse of time, the purpose of Congress in passing an act of reference ordinarily must be deemed to have been to confer jurisdiction or to take the case out of the statute of limitations, and not to validate or affect the cause of action.
3. Where it is plain that a claimant performed a meritorious service, whereby the government reaped a benefit, for which in equity and good conscience it should respond; or where he rendered work and service at the solicitation of the agents of the government, but without due authority on their part; or where he rendered service to the government without the solicitation of its agents, but subject to the approval of Congress, and no other rational purpose can be ascribed to Congress in passing the act, it must be inferred that the legislative purpose was to ratify the transaction so far as to enable the claimant to recover for services rendered in quantum meruit, or for goods furnished in quantum valebant.
4. But a special act of reference will not take a case out of the operation of a general statute without express words to that effect, or by necessary implication; neither will a general direction in the act that a claim be adjudicated upon principles of equity and justice (or other equivalent phrase) be held to confer equity jurisdiction, or to authorize the judges to award damages in their discretion.
*411 But the majority of the court limit the expression of their' opinion concerning the construction of these referring acts to. the following conclusion, viz: that in each case the court will, from the language of the act, and from the nature of the case,, and from the surrounding circumstances, endeavor to ascertain, and carry out the legislative intent.
Seeking for the legislative intent in the present case, we find that tne purpose of the act could not have been to confer jurisdiction, for this is a case coming within the general jurisdiction of the court. It could not have been to take the case out of the statute of limitations, for the statute does not yet bar the demand. We also find that the defect in the claimants’ case— the want of authority in the superintendent who required the better kind of masonry to be built — was apparent on the face-of the contract, which reserved to the chief quartermaster of the department all authority to order alterations, and which limited the duties of the superintendent to inspecting the work and rejecting material. We also find that these provisions of' the contract were quoted and clearly brought to the attention of Congress-in the report of the committee on which the claim was considered, and that all of the material facts since substantiated by evidence were set forth in that report! (See Report 162, Committee on Military Affairs, Senate, second session Forty-sixth Congress.) Taking this private act in connection with these primary facts, and interpreting it in connection with the previous decision of the Supreme Oourt in Hawkins’s Case, and the subsequent relief given by the same Congress to that claimant, we are satisfied that the purpose of Congress was that the act referring the claim should also operate upon the cause of' action, and that the claimants’ case comes within the decision of the Supreme Court in the case of Roberts (supra).
Assuming, then, that this statute was intended as something more than a mere act of reference, the question arises, in what manner and to what extent does it operate upon or affect the cause of action ?
The claimants’ counsel contended on the trial that the authority given to the court to adjudicate the claim according-to law and justice” entirely relieved the court from the restrictions of the ordinary rules of law; that it is “ a broader jurisdiction than that entertained by courts of law or equity,” and that the court has acquired power by the simple introduction *412 ■of tlie word “justice” in the not “to adjudicate the cause upon principles of absolute justice, whether such principles have or have not been incorporated into our systems of law and equity jurisprudence.” But the decision of the Supreme Court in Tillson’s Case (supra) is adverse to the proposition, and it is manifest that, if the claimants cannot recover upon ordinary legal principles, their case is beyond the remedial purpose of Congress, and must fail.
The principle which should govern such a case as the claimants’, or the effect which should be given to such a statute as has been passed for their relief, we apprehend is not that of' •absolute discretion on the part of the judges, nor a gratuitous making a contractor whole irrespective of his legal rights or the defendanst’ legal liabilities, but is simply this:
When a man accepts the services of another, or receives his goods, he is ordinarily in equity and good conscience bound to pay for them, and the law imports from the transaction an implied contract, and upon principles of equity and justice awards to the plaintiff compensation for his services hi quantum meruit, and for his goods in quantum valebant. If, however, it appear that the work was done under an express contract, the law ■excludes evidence as to its value, and does not stop to inquire whether it was done at a profit or loss, but limits the damages to the price fixed by agreement of the parties. If, notwithstanding that there was an express contract between the parties, it appears (say, in the case of a building contract like the present) that the owner subsequently requested the contractor to perform another and more costly kind of work than that specified in the contract, the law applies the contract so far as it is appli- ■ cable to the case, but for the extra work or increased cost awards to the contractor such compensation as it was fairly worth. But if, notwithstanding the benefit thus conferred upon the owner, it appear that departure from the contract was the unauthorized act of his agent, and that the extra work was ■done with neither his authority nor his sanction, no legal obligation will arise out of the transaction, and it will rest entirely with the conscience of the owner whether to ratify the unauthorized act of his agent, or to leave the contractor without recompense for the benefit received. In such a case it might happen — it indeed often does happen — that a conscientious owner, unwilling to do wrong to his builder, and being igno *413 rant as to wlmt bis moral obligation in the premises may be, refers to some friendly arbitrament the questions, whether there was a departure from the contract, whether it was ordered by his architect, and what the value of the additional work thus done may be. In precisely the same manner Congress, being in the stead of owners and defendants, have purposed here to give relief to these builders, and to chat extent have ratified or assumed the unauthorized act of their agents, and submitted the question of liability and damages to the legal determination of this court. To that extent, therefore, we understand the statute as authorizing the court to do “justice” to the claimants, and within those limitations we proceed to adjudicate the case according to law.
Applying these principles to the specific causes of action set forth in the findings of fact, we reach the following final conclusions of law:
1. As to the cause of action set forth in Findings I and VI, and the demand based thereon that the contract be reformed by inserting the omitted provision of the claimants’ proposals (which was inserted in the abandoned contract) relative to the depth of the foundations, and that the court render judgment for the damages which the claimants would be entitled to recover if that provision had been inserted in the final contract, viz: $2,000.17, we agree with the committee of the Senate (supra) in thinking that the claim was meritorious, but are of the opinion that the statute which referred the claim confers upon the. court no equity jurisdiction, and, therefore, that we are unable to decree relief. Haskell’s Case (9 C. Cls. R., 410); Harvey & Idvesey’s Case (12 id., 141).
2. As to the cause of action amounting to $4,375, set- forth in. Finding VIII, for losses and expenses thrown upon the claimants by the defendants changing the site of the proposed building, we are of the opinion that, having been incurred before the contract was approved by the Quartermaster-General, as was. required by its own terms, they were incurred at the risk of the contractors. Moreover, we are of the opinion that the claimants’ subsequent acceptance and execution of the second contract was a voluntary substitution of the one for the other, and a. relinquishment of any damages which might have been caused to them under the first.
3. As to the cause of action amounting to'$>l,000, for a supe *414 rior quality of sand, as set forth in Finding IX, we are of the ■opinion that the sale, according to the terms of the contract, was not a sale by sample, but subject to inspection and rejection by the superintendent. Evidence to show what transpired prior to the execution of the written agreement is clearly ■evidence to vary its terms, and inadmissible.
4. As to the cause of action amounting to $1,500, set forth in Finding X, for Louisiana lumber, the contract required an article which should be “ free from knots and defects of all kinds,” and it, like all the other material for the building, was to be subject to the inspection and rejection of the superintendent. Nothing was said in the contract about either Texan or Louisiana lumber, and neither was required by the superintendent. He merely required lumber to be furnished which, in his judgment, complied with the terms of the contract; and the claimants’ inability to furnish Texan lumber of that quality was their misfortune. In our opinion the action of the superintendent imposed no liability on the defendants.
5. As to thecause of action for building walls of ranged rubble or broken ashlar masonry, set forth in Finding XI, the defendants reaped a positive benefit from the act of their superintendent in requiring that kind of work to be done, and in our opinion the claimants should recover its reasonable value; that is to say, the additional cost of the same, which is fixed by the findings at $12,606.
6. As to the cause of action amounting to $277, for an improvement in the cornice, set forth in Finding XII, the work was voluntary; the superintendent did not require it; the alteration was permitted at the claimants’ request, and the permission was made expressly subject to the approval and ratification of the Quartermaster-General. The benefit, if any, was a mere matter of taste, which one person might admire and ■another disapprove of. The Quartermaster-General, who stood in the place of the owners, selected that portion which he regarded as beneficial, and paid for it. As to the remainder, the court cannot say that the defendants have either received a benefit or incurred a liability.
The judgment of the court is that the claimants recover of •the defendants the sum of $12,606.