Losing, J.,
delivered, the opinion of the court:
The case is before the court on a motion for a new trial. The material facts are that A. F. Cramer & Co. were a firm composed of loyal citizens, and established in Cumberland, in the State of Maryland, and under its laws; that at the breaking out of tbe rebellón the firm had a branch store in Martins-burgh, in the State of Virginia, conducted by A. F. Cramer,, then a resident there; that in April, 1862, he sold the goods of the store, and in September and October gave about $4,000 in notes, of the banks of Virginia and the Confederate States, to-Mr. Morrison, then an officer in the confederate service, to be invested in cotton. This was done by the xiurchase of cotton in Macon, in the State of Georgia, and the cotton was seized by the United States and sold, and its proceeds paid into the Treasury; and for these the original suit was brought under the Act of 12th March, 1803.
At the trial a -majority of the court held that the appointment of the agent by A. F. Cramer to purchase the cotton was-the act of the firm established in Cumberland, who thus, in time of war, appointed au agent lor a commercial transaction with the enemy.
In support of the motion for a new trial, it was contended that the war dissolved the copartnership so that A.F. Cramer and liis copartners became tenants in common of the late firnrs property in Martinsburgh, and he held his share of it- *304 in bis own right, and the shares of his late copartners as trustee for each of them, and as a principal resident at Martinsburg’h had a right “to leave his property to be invested in any manner, and by whatsoever agent he might select.”
The war dissolved the copartnership as to future joint dealings, but not as to winding up the affairs and outstanding transactions of the firm. For this, the property in Martinsburgh of the late firm remained the property of the firm, and liable for its debts exactly as the property of a person deceased belon'gs to his estate, and is liable for its debts in the hands of his admininistrator, who continues his estate and title; and each partner, as such, remained the agent of the firm, and could use only the authority of the firm in relation to such property; and he could not make title to any part of it for his own purposes, nor for these give title to any one else connusant of the facts.
The residence of A. F. Cramer, in Virginia, as a citizen of rebel territory, gave him individually the right to trade and deal there with his own individual property, as any other .citizen of Virginia might; but as the agent and representative of the firm located in Cumberland, and as to the property of the firm in Martinsburgh, he could do nothing more than the loyal firm in Cumberland could do, for he must use its authority; and as to the firm in Cumberland and this property, his residence in Virginia, at the breaking out of the war, created the same rights and duties for him that would have been created for a citizen of Cumberland, who, at the breaking out of the war, was in Virginia for business purposes, and had his property with him, and in such case the loyal citizen in hostile territory has, by the law of nations, a right to a reasonable time in which to remove his property; and, having that right, he is bound to exercise it, and with reasonable diligence; and he has no right to trade on it in hostile territory, nor to sell and invest it, except in the case of necessity made by an inability to secure it otherwise.
At the original trial of the case a majority of the court thought this necessity not shown, and that the only question on the evidence was whether Mr. Morrison was the agent of A. F. Cramer, a resident in Virginia, as was contended for the petitioner, or whether he was the agent of the loyal firm established in Cumberland, and appointed by its authority to carry on a commercial transaction with the enemy for the profit of *305 tlie lirm. Aud the majority .of the court'adhere to their former opinion on a reconsideration of the record.
That shows that the stock of g-oods belonging to the firm was at Martinsburgh, a border town, and within an hour’s transportation by railroad of loyal territory; that A. F. Cramer continued the business of the store, in no way interrupted by anybody, for a year after tlie war broke out; during which the firm, by permits, was'transporting goods to and from Virginia and Maryland; and that in April, 1362, when the locality was in possession of the Union forces, he sold the stock of goods, and afterward sent its proceeds down into the cotton States to be invested in cotton, for the proceeds of which the original suit was brought. To prove that all this was a necessity would require strong evidence, and we think the case does not furnish it.'
The motion for a new trial is .to be .dismissed.