HUNT, J.,
delivered the opinion of the court:
From the findings of fact by the court in this case, it appears that the claimants were the owners of 335 bales of cotton in March, 3 863. This cotton had been secreted on a plantation in Washington County, Mississippi, and had been piled up and put away in October, 1862, in order to preserve it for the claimants. It was at that date taken into possession and held exclusively for them by one Dodds, as their agent, who was a resident of Mississippi, living on the spot, before and during the war. Dodds’ possession of the cotton was disturbed by the military forces of the government, who captured and carried awaj, in March, 1863, 326 bales of the lot. These were afterward sold and the proceeds were paid into the Treasury.
The claimants were minors, domiciliated in Illinois, when the war broke out. Their father and legal guardian was a citizen of that State. lie died in June, 1861, and after that the claimants are not shown to have had any legal custodian appointed to the charge of their estate. They had and could have no knowledge, actual or constructive, of the events just related. Their infancy would relieve them from the effects of such knowledge, if it could be charged to them; and the prohibition and cessation of all intercourse between the sections of the country involved in war effectually prevented it. They continued ignorant of their title to this property, of its delivery to their agent, of his possession of it for them, of its capture and sale — nay, of its very existence — until the year 1870. One of the claimants attained majority in that year and the other was still an infant. Their claim had then become barred by the statute conferring jurisdiction in such cases, but they have been relieved from the effect of the statute by an act of Congress approved June ■22,1874, under which their claim has been referred to this court for its decision.
*10 The right of the claimants to recover rests upon two grounds:
First. They were the sole owners of the cotton in question at the time of its capture.
The cotton was produced on a plantation carried on by a partnership, composed of the claimants and one McHatton. ft had been formed in 1857 for the claimants by their father, as their guardian. The effect of the Avar was to dissolve this partnership, but the entire assets of the concern remained in the State of Mississippi, subject to the control of McHatton alone, and beyond that of the claimants, who Avere in Illinois. In breaking up the concern and Avindingup its affairs, McHatton appropriated to himself the slaves and removed with them into Texas, where he employed them for his own advantage; and in settlement of the. interest of the claimants in the partnership, and in discharge of his indebtedness to them, he left on the plantation and placed in charge of their agent a quantity of cotton produced upon the place, of which that involved in this suit constituted a part. To this cotton he, at the time and subsequently, both during and after the war, renounced all interest in favor of the claimants. The arrangement was assented to and perfected by Dodds, and the cotton Avas reduced to possession and held by him for the exclusive benefit of the claimants, as already stated. They ratified this arrangement as soon as it came to their knowledge, and they now assert their title thus acquired as one of the grounds for recovering in this action.
Of the validity of this title the court entertains no doubt. The principles of public law Avhich control the case are simple and elementary. The recent civil conflict in which our country was unhappily involved has rendered them familiar to the courts, to the legal profession, and to the people of the nation. As soon as the war commenced, all business intercourse between the belligerents, except Avith the special permission of the Government, became illegal and was required to terminate. The prohibition rested not only upon the acknowledged principles of public laAV, but was explicitly announced in the non-intercourse act passed by Congress as early as the 13th of July, 1861.
The effect of this principle Avas to dissolve the copartnership between the claimants and their partner, McHatton. But this dissolution had no regard to things past, but only to things future. The parties were still partners as to the goods and property actually acquired by them as such before the war, and *11 remained bound to account to eacb other for the proceeds of such goods and property so acquired. (Griswold v. Waddington, 16 Johns., 493; Wood v. Braddick, 1 Taunt., 104; Cramer v. United States, 7 C. Cls. R., 304.)
In pursuance of the obligaton imposed upon McHatton by Ms contract, be effected the division or settlement by which the cotton in controversy was intrusted to Dodds, and continued to be held by him as the agent, and for the benefit of the claimants, at the time of its capture. Dodds’ authority had been conferred upon him by McHatton and S. A. Douglas anterior to the war, in May, 1860. Under this authority he acted in receiving and holding possession of the cotton.
If the mandate of Dodds had been created during the war, it would have been invalid, for he could have had no authority conferred upon him without a violation of the prohibition of intercourse between the belligerent parties. But such not having been the case, he was fully empowered to receive the property paid over and delivered to him in discharge of McHatton’s admitted indebtedness to the claimants.
In Grossmeyer v. The United States (9 Wall., 72), the Supreme Court, through Mr. Justice Davis, held: “We are not disposed to deny the doctrine that a resident in the territory of one of the belligerents may have, in time of war, an agent residing in the territory of the other, to whom his debtor could pay his debt in money, or deliver to him property in discharge of it; but in such a case the agency must have been created before the war began, for there is no power to appoint an agent for any purpose after hostilities have actually commenced, and to this effect are all the authorities.” And in the leading cas,e of Griswold v. Waddington, already quoted, Chancellor Kent held that if a creditor, though a subject to the enemy, have a known.agent here, payment may be made to him. (16 Johns., 484; Denniston v. Imbrie, 3 Wash. C. C., 303; Clark v. Morey, 10 Johns., 73; 1 Emerigo,, 567; Connecticut v. Pennsylvania, 1 Pet. C. C., 524.)
It results from these principles that a payment in discharge of an actual indebtedness by one partner to his absent partners, after the dissolution of the concern by war, whether such payment be effected by the delivery of a sum of money or of goods, if made in good faith, and with no purpose to evade the operation of the rights of the Government, during our civil war, is- *12 valid if made to an agent on tbe spot, and if tbe agency bad been created before tbe war.
If tbe money or goods tbns delivered prove to be inadequate to tbe discharge of tbe just claims of tbe absent partners, as might be inferred from tbe facts in this case, it rests with tbe absentees alone, who suffer from tbe injustice, to make complaint, and, when the war terminates, to invoke a remedy at tbe bands of the courts of tbe country. If, however, they rest contented with tbe settlement as effected through their representative, and if, as in tbe instant case, they ratify and confirm it, and base a right of action upon it, as these claimants now do, it is a matter of no concern to tbe Government bow onerous and unfair it may appear to have been.
It would be a grave reproach to tbe law of nations and a cruel hardship to these claimants if considerations like these were to cut them off from a recovery in this case. Bereft at an early age by death of their legal guardian and natural protector, them property, very soon after tbe breaking out of tbe Avar, was entirely in tbe hands and at tbe mercy of their partner. Tbe agent, whom tbe foresight of their, guardian during bis lifetime bad intrusted with tbe supervision of their interests, was tbe only party who could act in their behalf and preserve those interests in part at least. Happily for them, tbe established principles of public law which have been stated interpose for their protection in this extremity, and give full effect and validity to bis acts in the settlement and payment be assented to in their behalf.
Second. Tbe claimants next insist that even in case their title were considered 'invalid, they still have tbe right to recover in their character of surviving partners. McHatton died in 1872. The statute for the relief of the claimants was approved June 22, 1874. It expressly provided “that the claim of Bobert M. and Stephen A. Douglas, for payment for their cotton seized in March, 186.3, be, and the same is hereby, referred to the Court of Claims for its decision.” By this statute the claimants became authorized to institute and maintain this suit.
Without the statute, as surviving partners, they were authorized in law to sue in their own names for the recovery of the property of the partnership. (1 Ohitty’s Pldgs., 19 $ Story on Part., § 346, note.)
*13 Tliere is do sound reason in the technicalities of the law or the principles of justice why they should not be permitted to sue for and recover the entire proceeds of their cotton captured and sold by the Government.
It is therefore ordered that there be judgment in favor of the claimants for the sum of $58,419.20, the proceeds of their cotton, as ascertained in the additional findings of the court this day filed.