Nott, J.,
dissenting:
In the case of the Douglas Heirs (14 C. Cls. R., 1) Congress passed the following private act (Act 22d June, 1874, 18 Stat. L., 606):
uBe it enacted, (6c., That the claim of BobertM. and Stephen A. Douglas, for payment for their cotton seized in March, eighteen hundred and sixty-three, be, and itis hereby, referred to the Court of Claims for its decision, according to law and the practice of that court, in such cases and proceedings.”
The act was a naked grant of jurisdiction, containing no reference to the Abandoned or captured property Act, and was without one word which could validate or revive or affect the claimants’ right of action. The case was twice tried (11 0. Cls. R., Goo ; 14 id., 1); a judgment of $58,419 was recovered, from which the Attorney-General did not appeal; and no man ever doubted the sufficiency of the private act to uphold the judgment.
A statute of jurisdiction is merely a missive from the sovereign to the tribunal saying, “ Yon have authority to hear such cases.”' It relates to the power of the court, and not to the right of action of the suitor. Therefore, if the Douglas heirs had no valid subsisting right of action, this statute of jurisdiction gave them none.
In the case of Robert Erwin (13 C. Cls. R., 49; 97 U. S. R., 292) Congress passed the following private act (Act 5th February, 1877, 13 Stat. L., 509):
“That the Court of Claims may take jurisdiction, under the provisions of the act of March 12, 1863, entitled ‘An act to provide for the collection of abandoned property and for the prevention of frauds in insurrectionary districts within the United States,’ of the claims of Robert Erwin, of Savannah, Georgia, for property alleged to have been taken from him, which claims were, by accident or mistake of his agent or attorney, and without fault or neglect on his part, as is claimed, not filed within the time limited by said act.”
*503 Of it the Supreme Court held :
“ The purpose of the statute passed for the relief of the appellant, as is manifest on its face, was to remove the bar of the Captured and abandoned property Act, which had arisen without his fault, or rather to confer jurisdiction upon the Court of' Claims over his case, which otherwise would not have existed... It was not intended to enlarge or affect Ms title to the claim, or to change his position in court from what it ioould have been had he instituted his suit within the two years prescribed by that act. His claim must therefore be considered like the claims of other-suitors, both with respect io its original validity as a demand,' r against the government and •with respect to his titleP
And the court having determined that the mere grant of jurisdiction was sufficient to warrant an adjudication upon the-merits, proceeded to hold that where cotton was captured by-the military forces of the United States and sold, and the proceeds were paid into the Treasury, the claim of the owner-against the government constituted property, and passed to his assignee in bankruptcy, though, by reason of the lapse of time, it could not then have been judicially enforced.
The decision was in harmony with all that had gone before-it. In the Supreme Court it had been held, in Klein's Case (13 Wall. R., 129), that “ the property of the original owner is in no case absolutely divested," and in the Intermingled Cotton Cases (92 U. S. R., 651) that the fuud in the Treasury, “as lec-hare often decided, is a trustP In the Court of Claims the same-doctrine, in various forms, had been laid down, and the same-equity in munerous cases administered, which are thus summarized in a former opinion (Burke & Tait's Case, 13 C. Cls. R., 245):
“ The nature of a subject or jurisdiction must sooner or later, in a greater or less degree, guide and control the action of a court. Accordingly, at a very early day (Turner's Case, 2 0.. Cls. B.., 390) this court found itself compelled to assume the-functions of a court of equity in these abandoned or captured property cases, in allowing motions analogous to ‘ bills in the-nature of a bill of interpleader’ (Story, Eq. Jur., sec. 824; McHenry v. Hazard, 45 N. Y., 580; 4 Paige, 483; Hopkins, Ch., 274); in compelling adverse claimants to interplead; in consolidating distinct suits; in bringing together in one suit all conflicting claims upon a particular fund ; and, generally, in treating the proceeds in the Treasury as a fund in equity In ate least one of those cases where, there being many adverse parties, distinct suits had been consolidated, and only one judg. *504 ment finally rendered determining the rights of several adverse claimants as between each other and the defendants, the Supreme Court acted upon it without questioning the equitable power assumed by the court (The Elgee Cotton Cases, 22 Wall., 180), and in another instance expressly approved of and upheld the course .which this court had pursued (Intermingled Cotton Cases, 92 U. S. R., 651).
“ In every cotton case that has ever been before t^e court the returns of the Treasury have been treated as the reports •of a trustee in regard to a fund in equity, in and the parties have been allowed to resort to other returns than those made in the case having a hearing, and decrees have repeatedly been rendered on returns in other cases which neither party produced •or read in evidence. In Price’s Case (7 id., 567) the court segregated the money in the Treasury into distinct funds, and charged the funds with losses and recoveries in other suits, and withheld moneys for suits not yet tried, and exercised a knowledge outside of the record of the case such as is said to exist ■only in the conscience of the chancellor, and announced that its decision should stand as an accounting for all subsequent •cases (Austell’s Case, 7 id., 599; Cartwright’s, 8 id., 465; Beall’s, 9 id., 299; H. J. Price’s, id., 328; Ross’s, 12 id., 565), and carried its action to the utmost verge of the authority of a court of equity. As early as Woodruff’s Case (5 C. Cls. R., 645) a majority announced that such a suit is a suit in equity, relating to a fund in equity, and brought to enforce a trust, ’ a theory upon which the court has steadfastly acted ever since, and which has never been questioned from that day to this. Indeed, it is safe to say that there has never been a case where the due administration of the fund required the interposition of a court of equity that this court has not assumed equity powers in treating the government as a trustee and the fund as a trust fund in equity.”
Here I must remark that the cases of Erwin (supra) and Haycraft, (22 Wall. R., 81) are utterly distinct, having nothing in common but the fact that the claimant had once been the owner of captured cotton. The former was a proceeding in equity to enforce a trust; and as to it, the Supreme Court held that the trust existed and the right remained, and that all that was ■needed was a tribunal having jurisdiction. The latter was an action at law to recover upon an implied contract; and as to it the Supreme Court held that no implied contract had ever ■arisen and that no recovery at law eonld possibly be had.
In the present cases of Ford and Webb the reference of the Senate is in these words:
*505 u February 28,1885.
“ Resolved, That the claim of S. S. Webb and Company,’for the nse of William G. Ford, as embraced in Senate bill No. 2653, in the Forty-eighth Congress, be referred (in accordance with the provisions of section 1059 of the Revised Statutes) to the Court of Claims, together with the papers, vouchers, proof, and documents appertaining thereto.”
This resolution, it will be observed, does not in terms define the claim which it refers; but in the bill 2653 it is described as a “ claim ”11 for the proceeds of 50 hales of cotton” seized “ under the Abandoned or capturedproperty Act, at Mobile, Ala.,inMay, 1865,” “ and the proceeds paid into the Treasury.” Theresolutions of the Senate, therefore, referring the claims are substantially identical with the acts of reference in Douglas and Erwin; and the claimants seek to enforce the same trust, and do not seek to recover upon implied contract. Moreover, the Supreme Oouri has held that such claims are subsisting property, needing only a jurisdiction, in which they may be asserted, while the Revised Statutes (§ 1059) declare that this court shall have jurisdiction of “ all claims which may be referred to it by either house of Congress.” Why, then, if the Senate has power to confer jurisdiction, should not these claimants recover a final judgment in this court?
The original Court of Claims Act, 1855 (10 Stat. L., p. 612, § 1), contained this jurisdictional provision:
“ The said court shall hear and determine all claims founded upon any law of Congress, or upon any regulation of an executive department, or ux>on any contract, express or implied, with the government of the United States, which maybe suggested to it by a petition filed therein; and also all claims ivhich may be referred to said court by either h-use of Congress.”
As the statute then stood two interpretations might have been given to the last clause. It might have been held that it was alternative to the preceding grant of jurisdiction, and that one of the houses of Congress could invest the court in a special case with a jurisdiction not given generally by the statute— with jurisdiction of a marine tort, of a proceeding in admiralty, of a case in equity. Or it might have been held that the reference by one house was alternative to bringing suit by voluntary petition, the true reading, by construction, being, “ The court shall hear and determine all claims which may be sug *506 gested to it by a petition filed therein (or) which my be referred to it by either house.”
The latter was the interpretation practically given to the statute by Congress and the bar; and a statutory illustration of it may be found in the subsequent Act 25th June, 1868 (15 Stat. L., p. 75, § 7), which empowered the head of an executive department to transmit a pending claim, provided that it came within the general jurisdiction of the court.
When the Amended Court of Claims Act, 1863 (12 Stat. L., p. 765), became a law, there were again two constructions which might be given to the amended statute. It might be said that the power of either house to confer new jurisdiction continued (if it ever existed); or it might be said that since the new act changed the tribunal from a Congressional commission to a court, and authorized it to render final judgments, and created a statute of limitations, the unlimited power given to either bouse to confer jurisdiction was inconsistent with the new character of the court, and hence was repealed by the thirteenth section, which repealed all acts and parts of acts “inconsistent with the provisions of this act.”
The latter was the construction universally given; for from 1863, when the amendatory act was passed, to 1874, when the Revised Statutes took effect, not one single claim, so far as I have been able to find, was referred to this court by either of the houses of Congress.
Such was the condition of this statute law when Congress resuscitated the provision before commented upon by placing it in the Revised Statutes. And not only was it retained, but it was stripped of the clause which indicated that a reference by one of the houses of Congress might be but the alternative of the voluntary filing of a petition by the claimant. The language of the law, as the Revised Statutes re-enacted it, is as follows:
“Sec. 1059. The Court of Claims shall have jurisdiction to hear and determine the following matters:
“ First. All claims founded upon any law of Congress, or upon any regulation of an executive department, or upon any contract, expressed or implied, with the government of the United States, and all claims which may be referred to it by either house of Congress.”
Both houses of Congress united in enacting the Revised *507 Statutes iu 1874; but neither exercised the power of creating a new jurisdiction under section 1059 until on the 28th February, 1885, the Senate referred these claims.
But between the enactment of the Revised Statutes, in 1874, and the reference by the Senate, in 1885, some new jurisdictional conditions had been legislated into existenceon the 3d March, 1883, Congress had passed the Bowman Act (22 Stat. L., p. 485), which provides:
" Be it enacted, (She. [section 1], That whenever a claim or matter is fending before any committee of the Senate or House of Representatives, or before either honse of Congress, which involves the investigation and determination of facts, the committee or house may cause the same, with the vouchers, papers, proofs, and documents pertaining thereto, to be transmitted to the Court of Claims of the United States, and the same shall there be proceeded in under such rules as the court may adopt.
“ When the facts shall have been found, the court shall not enter judgment thereon, but shall report the same to the committee or to the house by which the case was transmitted for its consideration.” -
Here we have the latest statute authorizing “ either house of Congress” to “cause to be transmitted to the Court of Claims” — what? Any “claim or matter” pending before it “ which involves the investigation and determination of facts.” But this authority is coupled with the condition that “ when the facts shall have been found the court shall not enter judgment thereon, but shall report the same to the house”; and, moreover, the authority is granted subject to the following express limitations:
“ Sec. 3. The jurisdiction of said court shall not extend to or include any claim against the United States growing out of the destruction or damage to property by the Army or Havy during the war for the suppression of the rebellion, or for the use and occupation of real estate by any part of the military or naval torces of the United States, in theoperations of saidforces duiing the said war, at the seat of war.
“For shall the said court have jurisdiction of any claim against the United States which is now haired by virtue of the provisions of any law of the United States.”
It will be seen that the jurisdictional portions of these two statutes are wonderfully alike in their essential parts. The subject-matter of both is the same — a claim pending in Congress ; the power to refer is the same — either house of Congress; *508 the tribunal to which the reference is to be madeis the same — the Court of Claims. The only difference tp be found is that the one statute uses the word “ referred ” and the other the word “transmitted,” and this difference may be further resolved into the difference between the prefix re and the prefix tram ; and that brings the difference down to a very fine x>oiut indeed.
I do 'not say — it is not necessary to say — that the Bowman Act repeals that provision of the Revised Statutes. But if the Bowman Act does not work a repeal, it at least does this: it recognizes the power of either house of Congress to refer a claim to this court as existant, and then attaches to the power certain restrictions, among which are, 1st, that in cases so referred the court shall not render judgment, but shall report them back to Congress ; 2d, that the court shall not entertain even this limited “jurisdiction of any claim” “ which is now barred by virtue of the provisions of any law of the United States.”
This last restriction applies, and was intended to apply, to the cotton cases — to cases where the right to prosecute under the Abandoned or captured property Act had lapsed. (Ford's Case, 19 O. Cls. R., 519.) I must therefore conclude that the resolution of the Senate referring these claims conferred no jurisdiction upon the court.